929 So.2d 40 (2006)
Drew ROSENHAUS, an individual, Jason Rosenhaus, an individual, and Rosenhaus Sports Representation, Inc., a Florida corporation, Appellants,
v.
STAR SPORTS, INC., an Illinois corporation, Appellee.
No. 3D06-189.
District Court of Appeal of Florida, Third District.
April 26, 2006.
Rehearing Denied June 7, 2006.
*41 Swickle & Swickle and Adam Swickle, Fort Lauderdale, for appellants.
Grossman, Roth, Olin, Meadow, Cohen, Yaffa, Pennekamp & Cohen and Seth Eric Miles, for appellee.
Before GERSTEN, FLETCHER, and SUAREZ, JJ.
SUAREZ, J.
Drew and Jason Rosenhaus and Rosenhaus Sports Representation, Inc., appeal from the denial of a motion to dismiss and to compel arbitration. We reverse.
Star Sports, Inc. ("Star"), filed a multi-count complaint in the Circuit Court of Miami-Dade County against Drew Rosenhaus, Jason Rosenhaus, and Rosenhaus Sports Representation, Inc., a Florida corporation, alleging intentional interference with an advantageous business relationship and tortious interference with a contractual right. The complaint alleges that Star is in the business of providing marketing and related services to professional football players in the National Football League ("NFL"), and that Drew and Jason Rosenhaus are both certified Contract Advisors with the National Football League Players Association ("NFLPA"). The complaint alleges that Star entered into a written contract referred to as a "Marketing Agreement" with Anquan Boldin, a professional football player in the NFL, wherein Star was to be Boldin's exclusive agent for marketing and related services. The complaint also alleges that Drew and Jason Rosenhaus intentionally and unjustifiably interfered with this Marketing Agreement by directly soliciting Boldin to have Jason and Drew Rosenhaus and/or Rosenhaus Sports Representation, Inc., represent him in his marketing endeavors and to exclude Star from representing him. Drew and Jason Rosenhaus and Rosenhaus Sports Representation, Inc., filed a motion to dismiss the complaint and to compel arbitration, claiming the exclusive remedy for a dispute between two Contract Advisors relating to a Marketing Agreement is through arbitration pursuant to Section 5, the Arbitration Procedures provision, contained in the Agent Regulations of the NFLPA. The trial court denied the motion and this appeal from the non-final order was timely filed.
There are three elements to consider in ruling on a motion to compel arbitration: (1) whether the parties have entered into a valid arbitration agreement; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived. Travelers Ins. Co. v. Irby Constr. Co., 816 So.2d 829 (Fla. 3d DCA 2002). Two of the three elements are not presented on appeal. The issue of whether the parties entered into a valid arbitration agreement is not in dispute. All parties are members of the NFLPA and are "Contract Advisors," as defined by that organization. All parties agree that, as Contract Advisors, they are bound by the Agent Regulations promulgated by the NFLPA which detail the obligations, rights, and liabilities of Contract Advisors. All parties agree that the Agent Regulations contain a provision requiring certain disputes between Contract Advisors to be resolved through arbitration. The issue of whether the right to arbitration has been waived has not been raised on appeal. The only issue before us is whether the claims of intentional interference with an advantageous business relationship and intentional interference with the Marketing Agreement, are arbitrable claims pursuant to Section 5, Arbitration Procedures, of the Agent Regulations.
Whether a particular issue is subject to arbitration is a matter of contract *42 interpretation and is subject to de novo review. Ocwen Fed. Bank v. LVWD, Ltd., 766 So.2d 248, 249 (Fla. 4th DCA 2000). Arbitration is required only as to those disputes to which the parties have expressly agreed. Atencio v. U.S. Sec. Ins. Co., 676 So.2d 489, 490 (Fla. 3d DCA 1996). The arbitration clause must refer to the subject matter which is in dispute. All Am. Semiconductor, Inc. v. Unisys Corp., 637 So.2d 59, 60 (Fla. 3d DCA 1994). To determine whether the parties in this case agreed to arbitrate an issue relating to the Marketing Agreement, we must look at the scope of the language of the Agent Regulations.
The Arbitration Procedures provision of the NFLPA Agent Regulations states as follows:
SECTION 5ARBITRATION PROCEDURES
A. Disputes
This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from the following:
* * *
5. A dispute between two or more Contract Advisors with respect to whether or not a Contract Advisor interfered with a contractual relationship of a Contract Advisor and player in violation of Section 3(B)(21). . . .
A dispute between two Contract Advisors is required to be resolved through arbitration if the violation alleged is the interference by one Contract Advisor with the contract of another Contract Advisor and an NFL player in violation of Section 3(B)(21) of the Agent Regulations.
Section 3(B)(21), entitled Prohibitive Conduct, states in pertinent part:
B. Prohibited Conduct
Contract Advisors are Prohibited from:
21.(a) Initiating any communication, directly or indirectly, with a player who has entered into a Standard Representation Agreement with another Contract Advisor and such Standard Representation Agreement is on file with the NFLPA if the communication concerns a matter relating to the:
* * *
(iv) Services to be provided by prospective Contract Advisor either through a Standard Representation Agreement or otherwise. (emphasis added)
Therefore, prohibited conduct occurs when one Contract Advisor communicates with a player who has entered into a Standard Representation Agreement with another Contract Advisor and the communication concerns a matter relating to the services provided by the Contract Advisor to the player either through a Standard Representation Agreement or otherwise. The document in question is the Marketing Agreement entered into by Star and Boldin. The issue is whether the Marketing Agreement is a service "otherwise" provided by Star to Boldin, within the meaning of Section 3(B)(21)(iv). If the Marketing Agreement is such a service, the question of whether the Rosenhauses intentionally interfered with Star's business relationship and contractual rights with Boldin is an issue which the Agent Regulations require to be resolved through arbitration. If it is not, the issue is one which may be resolved in the circuit court.
The word "otherwise" is not defined in the Agent Regulations. As such, we may look to the dictionary to determine the plain and ordinary meaning of the word. See Sieniarecki v. State, 756 So.2d 68, 75 (Fla.2000). Black's Law Dictionary and Webster's New Collegiate Dictionary define the word "otherwise" as "in a different manner; in another way; or in other *43 ways." Black's Law Dictionary 992 (5th ed.1979); Webster's New Collegiate Dictionary 806 (1980). Therefore, the Agent Regulations prohibit communication by one Contract Advisor with an NFL player if the communication relates to services to be provided to that player by another Contract Advisor either through the Standard Representation Agreement or "in a different manner; in another way; or in other ways."
We conclude that, since the Marketing Agreement is an agreement whereby Star was to provide services to Boldin by marketing his name and obtaining endorsements and promotions for him, the Marketing Agreement is a service provided in a different manner; in another way, or in other ways (a service provided "otherwise"). The issue of whether the Rosenhauses initiated communication with Boldin and intentionally interfered with Star's Marketing Agreement with Boldin is an issue which the Arbitration Procedures of the NFLPA Agent Regulations require to be resolved through arbitration. As Contract Advisors with and members of the NFLPA, Star and the Rosenhauses are bound by the Agent Regulations and are required to resolve the claims of intentional interference with an advantageous business relationship and tortious interference with a contractual right through arbitration.
We therefore reverse the trial court's denial of the appellants' motion to dismiss and to compel arbitration and remand for further proceedings consistent herewith.